[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11976
Non-Argument Calendar

_____

D.C. Docket No. 6:16-cr-00183-CEM-GJK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ABASI AKEEM SMITH,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 26, 2018)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Abasi Akeem Smith appeals his conviction and sentence for forcibly assaulting a federal officer using a deadly weapon while the officer was engaged in the performance of his official duties, in violation of 18 U.S.C. § 111(a)(1), (b). Smith argues that the evidence was insufficient to establish that he knowingly assaulted an officer or that the officer was performing his official duties. He also argues that the district court erred by failing to instruct the jury that § 111(a) requires the victim to be performing an "official federal duty." Finally, Smith argues that the sentence imposed by the district court was both procedurally and substantively unreasonable. After careful review, we affirm his conviction and sentence.

## I.    FACTUAL BACKGROUND

Officers of the United States Marshals Regional Fugitive Task Force went to Smith's residence in Seminole County, Florida to execute an outstanding state warrant for Smith's arrest that had been adopted by the Task Force.[1] The Task Force officers observed Smith get into a vehicle and depart the residence, and they began following him. When Smith's vehicle crossed into Orange County, Florida, the officers contacted Task Force officers in Orange County for assistance, one of

---

[1] The U.S. Marshals Service is authorized to "investigate . . . fugitive matters, both within and outside of the United States, as directed by the Attorney General." 28 U.S.C. § 566(e)(1)(B). The U.S. Marshals Fugitive Task Force consists of federal, state, and local law enforcement authorities that adopt state court warrants, which allows state and local officers to execute those warrants outside of their jurisdictions. *See* 34 U.S.C. § 41503(a).

whom was Corporal Randolph Hovland.  Hovland, who was deputized as a U.S. Marshal, responded to the call and joined the other officers in pursuing Smith.

Smith's car pulled into a parking lot, and the officers followed.  The officers positioned themselves in several vehicles around the parking lot to prevent Smith from leaving.  Hovland drove to the north side of the parking lot.  When Smith drove toward an exit on the south side of the parking lot, a van manned by Task Force officers blocked Smith's path and activated its police lights.  Hovland, who at that time was parked about 20 feet behind Smith's vehicle, activated his emergency lights and began to position his vehicle to prevent Smith from exiting the parking lot's north exit.

The Task Force officers then exited the van with their guns drawn and commanded Smith to get out of the vehicle with his hands up.  Confronted by the officers, Smith put his car in reverse and accelerated "at a pretty high rate of speed," striking the passenger side of Hovland's vehicle and causing him to be "thrown violently around" inside the vehicle.  Doc. 64 at 64.[2]  After crashing into Hovland's vehicle, Smith continued to reverse, pushing Hovland's vehicle about 20 feet.  After stopping briefly, Smith then pulled forward, ripping the front tire off of Hovland's vehicle.  Hovland testified that he was afraid he would be seriously injured.  Smith then drove down an alley, with Task Force officers in pursuit.

---

[2] Citations to "Doc. #" refer to the numbered entries on the district court's docket.

After running into a fence, Smith got out of his car and began to flee on foot.  He was arrested nearby shortly afterward.

Smith was indicted and tried for forcibly assaulting or resisting a federal officer with a deadly weapon while the officer was engaged in official duties, in violation of 18 U.S.C. § 111(a)(1) and (b).  Following the close of the government's case, Smith moved for a judgment of acquittal, and the district court denied the motion.  After testifying in his own defense, Smith renewed his motion for a judgment of acquittal, which the district court denied.  The jury convicted Smith of forcibly assaulting a federal officer with a dangerous weapon; the district court sentenced him to 240 months of imprisonment.

## II.    STANDARDS OF REVIEW

Several standards of review apply here.  We review *de novo* the sufficiency of the evidence, "viewing all the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict."  *United States v. Boffil-Rivera*, 607 F.3d 736, 740 (11th Cir. 2010) (internal quotation marks omitted).

We review a district court's refusal to give a requested jury instruction for an abuse of discretion.  *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013).

4

When reviewing a sentence, we review a district court's findings of fact for clear error and its application of the Sentencing Guidelines *de novo*. *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015).

We review the reasonableness of a sentence under "a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007).

## III.    DISCUSSION

### A.    The District Court Committed No Reversible Error in Denying Smith's Motion for Acquittal.

A defendant commits forcible assault against a federal employee if he "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in [§] 1114 of this title while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1).  Section 1114 refers to "any officer or employee of the United States or of any agency in any branch of the United States Government . . . or any person assisting such an officer or employee." *Id.* § 1114.  A defendant is subject to an enhanced penalty if he "uses a deadly or dangerous weapon" during "the commission of any acts described in [§ 111(a)]." *Id.* § 111(b).  Thus, to convict a defendant under 18 U.S.C. § 111(a) and (b), the government must prove (1) the defendant forcibly assaulted the victim; (2) the victim was a federal officer engaged in his official duties; and (3) the defendant used a deadly or dangerous weapon in the course of the assault. *See id.* §§ 111(a)(1), (b); 1114.

5

On appeal, Smith makes three arguments that his conviction should be overturned. First, he argues that that the evidence was insufficient to establish that he possessed the requisite intent to assault a federal officer. Second, he argues that the evidence failed to establish that Hovland was a federal officer acting in his official capacity. Third, he argues that the district court erred by refusing to instruct the jury that under § 111 the victim must be performing "an official federal duty." We address each of his arguments in turn.

1.    *The Evidence Was Sufficient for a Reasonable Jury to Conclude that Smith Forcibly Assaulted a Federal Officer.*

Smith first argues that the government failed to prove he committed a forcible assault because the evidence did not show that he intended to cause serious bodily injury upon a federal officer. We disagree. To prove the first element of forcible assault on a federal officer, the government was required to establish that Smith "willful[ly] threat[ened] or attempt[ed] to inflict bodily injury upon the person of another [] coupled with an apparent present ability to do so." *United States v. Fallen*, 256 F.3d 1082, 1087 (11th Cir. 2001) (internal quotation marks omitted). Forcible assault includes "any intentional display of force such as would give the victim reason to fear or expect immediate bodily harm." *Id.* (internal quotation marks omitted). Section 111 does not require knowledge that the victim is a federal officer. *See United States v. Alvarez*, 755 F.2d 830, 842 (11th Cir. 1985).

The evidence was sufficient for a reasonable jury to conclude that Smith willfully threatened or attempted to inflict bodily injury upon another person and that he had an apparent present ability to do so. *See Fallen*, 256 F.3d at 1087. After Smith was told to exit his vehicle and put his hands up, he put his car in reverse and quickly accelerated toward Hovland's vehicle, striking the passenger side and causing Hovland to be "thrown violently." Doc. 64 at 64. Smith then continued to reverse, pushing Hovland's vehicle about 20 feet. When he pulled forward, his vehicle dislodged the front tire from Hovland's vehicle. As Hovland testified, he feared that he would be seriously injured by Smith's actions. From this evidence, a jury could conclude that Smith willfully threatened or attempted to inflict bodily injury on Hovland.

Smith argues that his testimony at trial in his own defense showed that he did not know Hovland was a federal officer, which "negate[s] his intent." Appellant Br. at 27. We reject this argument for two reasons. First, § 111(a) does not require knowledge that the victim is a federal officer, and thus Smith's lack of awareness that Hovland was a federal officer has no bearing on whether he possessed the requisite criminal intent. *See Alvarez*, 755 F.2d at 842. Second, even if Smith's lack of awareness as to Hovland's status could negate his criminal intent, the jury was entitled to disbelieve Smith's testimony. *See United States v. Hamaker*, 455 F.3d 1316, 1334 (11th Cir. 2006) ("[W]itness credibility is the sole

7

province of the jury." (internal quotation marks omitted)).  Indeed, considerable

evidence tended to undermine Smith's argument that he did not know Hovland was

a federal officer:  the van's police lights were flashing, the Task Force members

wore vests identifying themselves as law enforcement officers, and they ordered

Smith to get out of the van with his hands up.  We thus reject Smith's argument

that the evidence was insufficient to show that he forcibly assaulted a federal

officer.

Smith also argues that the evidence was insufficient to establish that

Hovland was a federal officer acting in his official capacity.[3]  We are unpersuaded.

"There is no bright-line test" to determine whether an officer is acting within the

scope of his or her official duties under the statute.  *United States v. Clemons*,

32 F.3d 1504, 1507 (11th Cir. 1994).  Instead, the inquiry turns on whether the

officer is "acting within the scope of what he or she is employed to do" or is

"engaging in a purely personal frolic."  *Id.*  We have held, for example, that an FBI

agent who was robbed of her purse "on her way to report for work at the FBI" was

_____

[3] To the extent Smith additionally argues that Hovland was not a federal officer under 18 U.S.C. § 1114 as a matter of law, we disagree.  Section 1114 defines federal officers as "any officer or employee of the United States or of any agency in any branch of the United States Government . . . while [he] is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties."  We agree with the district court that members of the U.S. Marshals Fugitive Task force are federal officers because they are authorized to "investigate . . . fugitive matters within and outside of the United States" and are directed by the United States Attorney General.  28 U.S.C. § 566.  Smith offers no authority to support his argument that such officers do not satisfy 18 U.S.C. § 1114's definition; we thus reject it.

engaged in the performance of her official duties. *United States v. Stephenson*, 708 F.2d 580, 582 (11th Cir. 1983).

Smith argues that the evidence was insufficient to show that Hovland was a federal officer because when he apprehended Smith he was acting in his capacity as a local sheriff, not as a member of the U.S. Marshals Service. Again, we disagree. Trial testimony demonstrated that the U.S. Marshals Fugitive Task Force consists of local officers, including Hovland, who are authorized by the federal government to pursue fugitives who have committed serious crimes. The Task Force adopts warrants—including state warrants—and deputizes local officers to execute those warrants. As multiple officers testified, local officers began pursuing Smith because the Task Force had adopted the warrant for Smith's arrest. Hovland was deputized as a U.S. Marshal on the day he pursued Smith, which he did as part of his Task Force duties. From this evidence, a reasonable jury could find that Hovland "was acting within the scope of what [he was] employed to do," and thus was performing his official duties. *Clemons*, 32 F.3d at 1507.

> 2.    *The District Court Committed no Error in Refusing to Give Smith's Requested Jury Instruction.*

Smith next argues that the district court erred by failing to instruct the jury that to be convicted under § 111(a) the defendant must have assaulted a federal officer performing an official federal duty. Prior to trial, Smith and the

government jointly proposed the following instruction for forcibly assaulting a

federal officer with a deadly weapon:

> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
>
> > (1) the Defendant "forcibly assaulted" the person described in the indictment;
> >
> > (2) the person assaulted was a Federal officer performing an *official duty*; and
> >
> > (3) the Defendant used a deadly or dangerous weapon.

Doc. 36 at 20 (emphasis added).  At the charge conference, Smith requested that

"official duty" be replaced with "official federal duty."  Doc. 64 at 126.  The

district court declined to make the modification, noting that the instruction as

written is the Eleventh Circuit pattern instruction.

A district court's refusal to give a requested instruction is an abuse of

discretion if:  "(1) the instruction is correct; (2) the court did not address the

substance of the instruction in its charge; and (3) the failure to give the instruction

seriously impaired the defendant's ability to present an effective defense." *United

States v. Maxwell*, 579 F.3d 1282, 1303 (11th Cir. 2009) (internal quotation marks

omitted).  In determining whether the instruction given substantially covers the

requested instruction, this Court "need only ascertain whether the charge, when

viewed as a whole, fairly and correctly states the issues and the law." *United

*States v. King*, 751 F.3d 1268, 1275 (11th Cir. 2014) (internal quotation marks omitted).

The district court did not abuse its discretion in refusing to instruct the jury according to Smith's request because the charge as a whole "fairly and correctly state[d] the issues and the law." *Id.* (internal quotation marks omitted).[4]  The instruction that the victim must be "a federal officer performing an official duty" mirrors the language in § 111(a)(1).  *See* 18 U.S.C. § 111(a)(1) (The victim must be a federal officer "engaged in . . . the performance of his official duties").  Furthermore, the district court instructed the jury regarding the Task Force's duties, stating:  "A member of the U.S. Marshals Regional Fugitive Task Force is a Federal officer and has the official duty to locate and apprehend fugitives."  Doc. 44 at 9.  The jury could therefore convict Smith only if it found at the time of the charged conduct that Hovland was apprehending fugitives in his capacity as a federal officer.  The given charge therefore adequately reflected the issues and the law, and the district court did not abuse its discretion in refusing to give Smith's proposed instruction.

**B.    Smith's Sentence Was Not Procedurally or Substantively Unreasonable.**

Smith also argues that his sentence was both procedurally and substantively unreasonable.  Smith's Presentence Investigation Report ("PSI") calculated his

---

[4] Although Smith arguably invited any error by agreeing to the instruction pretrial, it makes no difference because there was no error.

11

base offense level as 14 under the aggravated assault guideline, adding four levels for use of a dangerous weapon, pursuant to USSG § 2A2.2(b)(2)(B); two levels because Smith was convicted of violating 18 U.S.C. § 111(b), pursuant to USSG §2A2.2(b)(7); and six levels for creating a substantial risk of serious bodily injury to a law enforcement officer, pursuant to USSG § 3A1.2(c)(1).  Although Smith's base offense level and enhancements would have resulted in a base offense level of 26, because Smith qualified as a career offender under USSG § 4B1.1, his offense level was 32.

The district court adopted the PSI's guidelines calculations, applying a career offender offense level of 32, with an advisory sentencing range of 210 to 240 months' imprisonment.  Considering the advisory guidelines and all of the factors identified in 18 U.S.C. § 3553(a), the district court sentenced Smith to 240 months in prison, the statutory maximum.

### 1.    *Procedural Reasonableness*

To determine whether Smith's sentence is reasonable, first, we must assess whether the district court committed a significant procedural error.  *Gall*, 552 U.S. at 51.  Smith argues the district court erred in applying several sentencing enhancements to his sentence.  But because Smith was sentenced pursuant to the career offender guideline, even if the district court erred, any such error was harmless.

The Sentencing Guidelines provide separate guidelines ranges applicable to "career offender[s]." USSG § 4B1.1(b). A defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*Id.* § 4B1.1(a). Section 4B1.1 sets forth offense levels based upon the maximum sentence provided by the statute under which the defendant was convicted. For defendants convicted of crimes that carry a sentence of between 20 and 25 years of imprisonment, the applicable offense level is 32. *Id.* § 4B1.1(b). The guidelines instruct that the career offender guideline level should apply if it is greater "than the offense level otherwise applicable." *Id.*

We reject Smith's argument that the district court incorrectly applied several guidelines enhancements because "[e]ven if the district court had erred . . . such error would be harmless because [Smith's sentence was] based upon the application of the career offender guidelines . . . thereby making the [challenged enhancements] irrelevant." *United States v. Rubio*, 317 F.3d 1240, 1245 (11th Cir. 2003). The district court sentenced Smith as a career offender, a designation Smith conceded at the sentencing hearing and does not challenge here. Based on his conviction under 18 U.S.C. § 111, which carries a statutory maximum sentence of 20 years of imprisonment, the relevant offense level was 32. U.S.S.G § 4B1.1(b);

13

18 U.S.C. § 111. Section 4B1.1 provides that the district court should apply the career offender offense level if it is greater than the one that would otherwise apply, as it was here. Even assuming the district court erred in applying any of the enhancements recommended in the PSI, the error was harmless, as those enhancements were irrelevant to Smith's sentence. *See Rubio*, 317 F.3d at 1245. We thus reject Smith's argument that his sentence was procedurally unreasonable.

2.    *Substantive Reasonableness*

Having determined Smith's sentence was procedurally reasonable, we now determine whether his sentence was substantively reasonable. *See United States v. Williams*, 526 F.3d 1312, 1321-22 (11th Cir. 2008). When reviewing a sentence for substantive unreasonableness, we examine the totality of the circumstances, including whether the statutory factors in § 3553(a) support the sentence.[5] *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). The party challenging the sentence bears the burden to show it is unreasonable. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). Although we do not

---

[5] Under § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of the statute. These purposes include the need to: reflect the seriousness of the offense, promote respect for the law, provide just punishment; deter criminal conduct, protect the public from the defendant's future criminal conduct, and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

automatically presume a sentence falling within the guidelines range to be reasonable, we ordinarily expect it to be. *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008). We will not second guess the weight, or lack thereof, that a district court afforded to a given factor as long as the sentence is reasonable in light of all the circumstances presented. *United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010).

Smith argues that his sentence was unreasonable because it does not satisfy the statutory purposes of sentencing. But the district court heard Smith's arguments and explicitly stated that it had considered the § 3553(a) factors, noting that the 240-month sentence was sufficient but not greater than necessary to achieve the sentencing purposes. *See Gonzalez,* 550 F.3d at 1324 (explaining that "a district court need not discuss each of the § 3553(a) factors explicitly. . . . An acknowledgment [it] has considered the defendant's arguments and the § 3553(a) factors will suffice"). And, in explaining Smith's sentence, the district court specifically considered Smith's criminal history, highlighting that he previously had been convicted for possession of a firearm, after which he committed another crime. It was the attempt to take Smith into custody for that offense, the district court noted, that led to Smith's current conviction. Finally, the district court noted Smith's "incredibly destructive behavior," which suggests that the court concluded Smith had not been adequately deterred from engaging in criminal activity. Doc.

15

66 at 18; *see* 18 U.S.C. § 3553(a)(2)(B).  We thus reject Smith's argument that the district court substantively erred in sentencing him.  Because the record reflects that the court considered the sentencing factors, Smith has not shown that the sentence imposed was substantively unreasonable.

**AFFIRMED**.